UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHELLE RICHTER, Administratrix of
the Estate of Michael D. Richter, Deceased,

      Plaintiff,

vs.

PROCESS MACHINERY, INC., and
AMERICAN AGGREGATES CORPORATION,

      Defendants.
_____/

Civil Action No.
94-cv-71301

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

## OPINION AND ORDER GRANTING DEFENDANT AMERICAN AGGREGATES CORPORATION'S MOTION FOR SUMMARY JUDGMENT (Dkt. No. 170)

On April 1, 1994, Michelle Richter ("Plaintiff"), as the administratrix of the Estate of Michael D. Richter ("Decedent") filed a Complaint alleging that Decedent's death was caused by the negligence of Defendants Process Machinery, Inc. ("PMI"), and American Aggregates Corporation ("AAC"). (Dkt. No. 1.)

On November 22, 1995, the Court issued a Memorandum Opinion and Order granting in part and denying in part Defendant AAC's motion for summary judgment. (Dkt. No. 78.) Exactly one year later, on November 22, 1996, Plaintiff and Defendant PMI entered into a consent judgment. (Dkt. No. 89.) AAC was not a party to this agreement.

After the consent judgment, this case lay dormant for over 12 years, while Plaintiff and Defendant PMI litigated an indemnification action in Kentucky, which involved Defendant

1

PMI's liability in the instant matter. Then, on May 20, 2009, Plaintiff resurrected her dormant claims against Defendant AAC in this Court.

On October 10, 2011, Defendant AAC filed a Motion to Dismiss and for Summary Judgment. (Dkt. No. 170.) Plaintiff filed a Response on November 28, 2011. (Dkt. No. 179.) Defendant filed a Reply on December 12, 2011. (Dkt. No. 180.) Defendant filed an additional Reply on January 5, 2012 (Dkt. No. 183), and Plaintiff filed a Sur-Reply on January 13, 2012. (Dkt. No. 184.) The Court held a hearing on February 22, 2012.

For the reasons stated below, the Court will GRANT Defendant's Motion and DISMISS this case.

## I. BACKGROUND

The pertinent facts were succinctly summarized in the Court's November 22, 1995, Memorandum Opinion and Order granting in part and denying in part summary judgment. Those facts are incorporated herein, as follows:

> Defendant AAC hired Defendant [PMI] to design and erect materials necessary to construct an advanced automated 400TPH sand and gravel plant. The work included the assembly of a new 1200 ft. conveyer and was to be performed at a site owned by AAC in Romeo, Michigan. PMI entered into two subcontracts to complete the job -- one with Wheatland Machine & Welding, Inc. ("WMWI") to perform the hands-on construction and assembly work, and the other with Greenville Manufacturing Works ("GMW"), a wholly owned subsidiary of AAC, to perform the electrical portion of the contract. On Saturday, April 6, 1991, WMWI employees attempted to pull a long conveyor belt onto the conveyor frame, employing a rigging method. Plaintiff's decedent, Michael Richter, a WMWI employee,[1] stood on the conveyor's elevated walkway, adjacent to the sheave block portion of the rigging system. His job was to signal the end loader operator who was pulling the cable. During the conveyor belt pull, a one-quarter

---

[1] Michael Richter had been employed by WMWI for three days at the time of the accident. He was 29 years old and was said to have had seven years of mining experience.

2

> inch wire cord, which was attached to the "come-along" used in the rigging system, snapped. This caused the sheave block to strike Michael Richter in the head, partially decapitating him and killing him instantly.
> 
> The accident was apparently caused by the one-quarter inch cord attached to the come-along, which was crimped in a number of places. However, the Greenlee hook sheave used in the rigging process, which had been loaned to WMWI by GMW, was also inappropriately used. The sheave was intended for use with electrical cable, not wire cord. Neither AAC nor GMW employees were present on the Saturday of Michael Richter's accident. There was however, an AAC supervisor continuously on the job site Mondays through Fridays, and he was there on the preceding Friday, when the instant rigging was set up.
> 
> Plaintiff, Michelle Richter, brought a wrongful death action on behalf of her deceased husband, Michael Richter's Estate, alleging negligence on the part of both AAC and PMI. . . .

(Nov. 22, 1995 Mem. Op. 1-2.) The Court denied Defendant's Motion for Reconsideration of the above Opinion and Order granting in part and denying in part the Motion for Summary Judgment, on January 26, 1996. (Dkt. No. 81.)

On August 22, 1995, Defendant PMI and its insurer filed a lawsuit in Kentucky against WMWI and its insurer, alleging that WMWI was contractually obligated to indemnify PMI in the instant litigation. After entry of the consent judgment between Plaintiff and Defendant PMI, the parties agreed to suspend the proceedings in this litigation while PMI and Plaintiff sought resolution of the Kentucky litigation.

The Kentucky litigation progressed through two appeals, both filed by Defendant PMI. In the first appeal, which was decided on August 6, 1999, the Kentucky Court of Appeals reversed the Kentucky Circuit Court's grant of summary judgment in favor of WMWI and remanded the case for further proceedings. (Pl.'s Resp. Ex. H, Aug. 6, 1999 Opinion.) In the second appeal, decided December 8, 2006, the Kentucky Court of Appeals affirmed the Kentucky Circuit

3

Court's grant of summary judgment in WMWI's favor.[2] (Pl.'s Resp. Ex. I, Dec. 8, 2006 Opinion.) Defendant PMI sought leave to appeal to the Kentucky Supreme Court, which was denied on October 24, 2007. (Pl.'s Resp. Ex. J, Kentucky Supreme Court Docket.)

Thereafter, on February 14, 2008, Plaintiff's counsel contacted Defendant AAC's counsel by letter, stating that the Kentucky litigation had reached a resolution and that Plaintiff intended to continue the instant litigation against Defendant AAC. (Def.'s Mot. Ex. F, Feb. 14, 2008 Letter.) Counsel for the parties in this case had not contacted each other regarding the Kentucky litigation, or the instant litigation, since this case was stayed in 1996.

Now before the Court is Defendant AAC's Motion to Dismiss and/or for Summary Judgment.

## II. STANDARD OF REVIEW

### A. Motion for Summary Judgment

Defendant ACC has moved for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure. This rule provides that summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." The moving party bears the initial burden of showing that there is no genuine issue of material fact. *Matsushita Electric Industrial Co., Ltd., et al. v. Zenith Radio Corp., et al.*, 475 U.S. 547, 587 (1986). Once this burden is met, the opposing party must produce some facts showing there is a genuine issue for trial. *Id.* If a rational trier of fact could not, based on the

---

[2]In the first appeal, the Kentucky Circuit Court had rendered judgment in favor of WMWI on the basis of *forum non conveniens*. On remand, the Kentucky Circuit Court granted summary judgment in WMWI's favor on the basis of an exclusion for bodily injury in the indemnification portion of the contract between PMI and WMWI.

record as a whole, find in favor of the party opposing summary judgment, then summary judgment is granted in favor of the moving party. *Id.* The Court must view the facts and draw all reasonable inferences in favor of the non-moving party. The Court does not determine if all of the evidence favors one side or the other, but "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

**B. Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must view "all well-pleaded material allegations of the pleadings of the opposing party . . . as true, and the motion may be granted only if the moving party is nevertheless clearly entitled to judgment." *Tucker v. Middleburg-Legacy Place*, 539 F.3d 545, 549 (6th Cir. 2008) (citation omitted).

### III. ANALYSIS

Defendant argues that this case should be dismissed for two reasons: (1) Plaintiff has failed to prosecute her case, and (2) that summary judgment is now warranted in light of the Michigan Supreme Court case *Ormsby v. Capital Welding, Inc.*, 471 Mich. 45 (2004).[3]

**A. Failure to Prosecute**

Defendant AAC claims that, at a hearing on the consent judgment between Plaintiff and Defendant PMI, this Court instructed counsel for all the parties that the instant case would be suspended while Plaintiff and Defendant PMI pursued their Kentucky litigation. Counsel for Defendant AAC, Dwight D. Conger, states that his notes from the hearing indicate that this Court instructed Plaintiff to provide an update regarding the Kentucky proceedings by February 20,

---

[3]In *Ormsby*, the Michigan Supreme Court held that the "retained control doctrine" is subordinate to the "common work area doctrine," and cannot by itself serve as an exception to liability. 392 Mich. at 49.

1997. Counsel for Defendant did not include his notes from the hearing as an exhibit to the instant motion, and no transcript of the hearing currently exists, nor is there any order on the docket stating that Plaintiff is to provide the Court with an update by February 20, 1997. Defendant AAC argues that Plaintiff has failed to prosecute her case because she did not provide the Court or counsel for AAC with any updates on the Kentucky litigation, which has resulted in a lengthy period of inactivity in this matter.

Federal Rule of Civil Procedure 41(b) provides for dismissal where "the plaintiff fails to prosecute or to comply with these rules or a court order[.]" Dismissal for failure to prosecute "is a harsh sanction which the court should order only in extreme situations showing a clear record of contumacious conduct by the plaintiff." *Wu v. T.W. Wang, Inc.*, 420 F.3d 641, 643 (6th Cir. 2005) (citations omitted). The Court evaluates four factors in determining whether dismissal under this Rule is appropriate: "(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered." *United States v. Reyes*, 307 F.3d 451, 458 (6th Cir. 2002) (citation omitted).

*1. Willfulness, bad faith, or fault*

A plaintiff's delay merits a finding of fault if the delay "was intended to 'thwart' the judicial proceedings," or if the plaintiff shows "a 'reckless disregard' for the effect that his conduct would have on the case." *Schafer v. City of Defiance Police Dept.*, 529 F.3d 731, 739 (6th Cir. 2008). Even if a Plaintiff does not act in bad faith, this factor favors dismissal if a plaintiff's conduct is "at best extremely dilatory in not pursuing his claim, which indicates an intention to let his case lapse." *Id.*

6

Defendant argues that Plaintiff's 12-year delay in contacting the Court, from June 27, 1997 to May 20, 2009, merits a finding of fault. Defendant also argues that Plaintiff's failure to file a report with the Court regarding the Kentucky litigation merits dismissal of her case.

The Court disagrees. There is no evidence that Plaintiff acted in bad faith, or that she was dilatory at all in pursuing her claim. Plaintiff was actively litigating the indemnity claim in the Kentucky courts until October 24, 2007. Defendant AAC was contacted just a few months after Plaintiff's leave to appeal to the Kentucky Supreme Court was denied. Accordingly, Plaintiff was not "extremely dilatory" and did not act with "reckless disregard" for the effect of her conduct on these proceedings. *Schafer*, 529 F.3d at 739. Furthermore, there is no evidence that Plaintiff has not complied with a Court order by not providing an update on the Kentucky litigation.

Therefore, this factor does not favor dismissal.

*2. Prejudice to Defendant*

For purposes of dismissal for failure to prosecute, a defendant is prejudiced when it "waste[s] time, money, and effort in pursuit of cooperation which [Plaintiff] was legally obligated to provide." *Harmon v. CSX Transp. Inc.*, 110 F.3d 364, 368 (6th Cir. 1997).

Defendant does not claim that it has lost time, money, or effort in attempting to obtain cooperation from Plaintiff. Instead, Defendant argues that it has been prejudiced by the loss of evidence that has occurred due to the passage of time. *See Nealey v. Transportacion Maritima Mexicana, S.A.*, 662 F.2d 1275, 1281 (9th Cir. 1980) (noting that prejudice for lack of prosecution includes "loss of evidence and loss of memory by a witness."). Defendant asserts that five of the witnesses who were deposed in this case cannot be found. Defendant also claims that the original records of the construction project at issue have been destroyed.

Although memories have undoubtedly faded and several witnesses have not been located, the sworn deposition testimony of these witnesses has been preserved. Those witnesses who are available for live testimony can have their memories refreshed through their deposition testimony. The evidence that Defendant claims to have lost is thus not completely irretrievable. *See Adams v. Trustees of New Jersey Brewery Employees' Pension Trust Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (noting that prejudice includes "the *irretrievable* loss of evidence . . . ." (emphasis added) (citation omitted)). Accordingly, the Court finds that this factor does not favor dismissal.

*3. Prior Notice*

While the Court may dismiss an action under Rule 41(b) without prior notice to the plaintiff, *Link v. Wabash R. Co.*, 370 U.S. 626, 630-31 (1962), the Sixth Circuit "has repeatedly reversed district courts for dismissing cases [pursuant to 41(b)] when the district courts did not put the derelict parties on notice that further noncompliance would result in dismissal." *Wu*, 420 F.3d at 644 (citation omitted).

In the instant matter, Plaintiff has received notice of possible dismissal in the form of Defendant's Motion. *Harmon*, 110 F.3d at 368 (noting that plaintiff had "no argument that [he] was without notice that the district court was contemplating the dismissal of his complaint" where the defendant "had filed a motion to dismiss . . . ."). This factor thus weighs in favor of dismissal.

*4. Less Drastic Sanctions*

"The sanction of dismissal is appropriate only if the attorney's dilatory actions amounted to failure to prosecute and no alternative sanction would protect the integrity of pre-trial procedures." *Carter v. City of Memphis, Tenn.*, 636 F.2d 159, 161 (6th Cir. 1980).

The record reflects that the sanction of dismissal is not warranted in this case. During the extensive delay in this case, Plaintiff's counsel was litigating related matters in another district. Plaintiff's counsel was given leave to do so by this Court. Since 2009, when the instant matter was renewed, Plaintiff's counsel has not missed a filing deadline or failed to appear at a hearing or status conference. There have been no dilatory actions by Plaintiff's counsel, and this factor therefore weighs against dismissal.

Because three out of the four factors weigh against dismissal for failure to prosecute under Rule 41(b), the Court will DENY Defendant's Motion to dismiss.

**B. Rule 60(b), *Ornsby v. Capital Welding***

*1. Timeliness of motion*

Defendant has moved for reconsideration of the Court's November 22, 1995 Opinion and Order denying Defendant AAC's motion for summary judgment, and its January 26, 1996 Opinion and Order denying reconsideration. Defendant has moved pursuant to Federal Rule of Civil Procedure 60(b)(1) and (b)(6).

Rule 60(b)(1) allows the Court to relieve a party from a final judgment, order, or proceeding when there has been "mistake, inadvertence, surprise, or excusable neglect[.]" However, a Rule 60(b)(1) motion must be brought "no more than a year after the entry of the judgment or order . . . ." Fed. R. Civ. P. 60(c)(1); *see also Pierce v. United Mine Workers of Amer. Welfare and Retirement Fund for 1950 and 1974*, 770 F.2d 449, 451 (6th Cir. 1985), *cert. denied*, 474 U.S. 1104 (1986) (holding that "[a] 60(b)(1) motion based on legal error must be brought within the normal time for taking an appeal."). Defendant's motion is therefore untimely inasmuch as it seeks relief pursuant to Rule 60(b)(1).

9

A Rule 60(b)(6) motion "must be made within a reasonable time[.]" Fed. R. Civ. P. 60(c)(1). Rule 60(b)(6) allows the Court to grant relief from judgment for "any other reason that justifies relief." "A district court should grant relief from operation of a judgment under Rule 60(b)(6) when it determines in its sound discretion that substantial justice would be served." *Cincinnati Ins. Co. v. Byers*, 151 F.3d 574, 578 (6th Cir. 1998). But relief under Rule 60(b)(6) is only warranted "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989). Because a claim of legal error is subsumed by Rule 60(b)(1), relief for these claims "is not cognizable under Rule 60(b)(6) absent extraordinary circumstances." *Id.* Furthermore, "Rule 60(b)(6) motions also must be brought within the time allowed for appeal if legal error is claimed as justification for granting the Rule 60(b) motion." *Steinhoff v. Harris*, 698 F.2d 270, 276 (6th Cir. 1983).

In *Overbee v. Van Waters & Rogers*, 765 F.2d 578 (6th Cir. 1985), the Sixth Circuit found that a district court abused its discretion when it denied a Rule 60(b)(6) motion, where an Ohio Supreme Court case the Court had previously relied on was overturned subsequent to the district court's order. In so holding, the Sixth Circuit noted the following:

> Numerous courts have held that the mere showing of a change in the law is not enough to demonstrate such an extraordinary situation [justifying Rule 60(b)(6) relief] when the judgment has become final. However, we are of the opinion that the unique facts of this case compel the granting of the motion . . . .

*Id.* at 580. The Sixth Circuit then relied on two specific facts in finding that Rule 60(b)(6) relief was warranted. The Sixth Circuit first noted that "at the time the plaintiffs filed the motion, the judgment was not final." *Id.* Secondly, the Sixth Circuit stated that "[t]he action of the Ohio Supreme Court in reversing itself within one year is certainly an unusual occurrence." *Id.*

The Court finds that the instant case fits within the *Overbee* analysis. Although this case has been pending since 1994, the Court has not yet entered a final judgment. The time to file for an appeal has therefore not yet passed, and Defendant's Rule 60(b)(6) motion is timely. Furthermore, the Michigan Supreme Court's decision in *Ormsby*, which abrogated approximately 30 years of Michigan case law that this Court relied on in its November 22, 1995 Opinion and Order, constitutes an unusual occurrence that qualifies as an extraordinary circumstance. Accordingly, the Court will consider the substantive arguments set forth in Defendant AAC's Rule 60(b)(6) motion.

*2. Merits of Rule 60(b)(6) motion*

In *Ormsby*, the Michigan Supreme Court held that only the "common work area doctrine" is an exception to the general rule of nonliability, not the "retained control theory" as set forth in *Funk v. General Motors Co.*, 392 Mich. 91 (1974). *Ormsby*, 471 Mich. at 49. In its November 22, 1995 Opinion and Order, this Court found that Defendant was liable under the retained control theory, but did not apply a common work area analysis.

The Michigan Supreme Court has found four elements that must be satisfied for a general contractor or property owner to be held liable under the common work area doctrine: "(1) the defendant, either the property owner or general contractor, failed to take reasonable steps within its supervisory and coordinating authority (2) to guard against readily observable and avoidable dangers (3) that created a high degree of risk to a significant number of workmen (4) in a common work area." *Id.* at 54. "The high degree of risk to a significant number of workers must exist when the plaintiff is injured; not after construction has been completed." *Id.* at 60 n. 12. A risk that exposes only four individuals to danger is not a risk to "a significant number of workmen." *Hughes v. PMG Bldg., Inc.*, 227 Mich. App. 1, 7-8 (1997). The "common work

11

area" element distinguishes between "a situation where employees of a subcontractor were working on a unique project in isolation from other workers and a situation where employees of a number of subcontractors were all subject to the same risk or hazard." *Ormsby*, 471 Mich. at 57 n. 9 (quoting *Hughes*, 227 Mich. App. at 8); *see also Alderman v. J.C. Dev. Communities, LLC*, 486 Mich. 906 (2010) ("The only employees exposed to the risk of electrocution were two to six employees of one subcontractor, including the plaintiff, and therefore there was not a high degree of risk to a significant number of workers.").

Defendant argues that there is no evidence satisfying elements (3) and (4) of the common work area doctrine. The Court agrees.

The evidence in this case reflects that only three workmen, including the Decedent, were on the elevated pathway adjacent to the conveyor belt, which was the area in which the defective sheave block and rigging system created a high degree of risk. (Def.'s Mot. Ex. M, Michael Snyder Dep. 63-64.) Furthermore, there is no dispute that only WMWI employees were present on the day the accident occurred. (Def.'s Mot. Ex. M, Joseph Ritchie Dep. 109-10; Snyder Dep. 239; Rick West Dep. 42.) Taking the evidence in a light most favorable to Plaintiff, at the time of the accident, the defective sheave block and rigging system posed a risk to only three employees of one subcontractor. Therefore, there was not a high degree or risk to a significant number of workers, and Defendant cannot be held liable under the common work area doctrine.

Plaintiff argues that the Court should apply the common work area definition set forth in *Groncki v. Detroit Edison Co.*, 453 Mich. 644 (1996). In this case, the Michigan Supreme Court noted that a common work area can be "an area where the employees of two or more subcontractors will eventually work." *Id.* at 663. Plaintiff also argues that the Michigan Supreme Court's language, that "[t]he high degree of risk to a significant number of workers

must exist when the plaintiff is injured; not after construction has been completed," *Ormsby*, 471 Mich. at 60 n. 12, does not necessarily mean the common work area analysis only takes into consideration the situation at the time of the accident.

In *Ormsby*, the Michigan Supreme Court explicitly stated that it agreed with the definition of common work area set forth in *Hughes*, 227 Mich. App. at 8. The Michigan Supreme Court included the following language:

> where a substantial number of employees of multiple subcontractors may be exposed to a risk of danger, economic considerations suggest that placing ultimate responsibility on the general contractor for job safety in common work areas will "render it more likely that the various subcontractors . . . will implement or that the general contractor will himself implement the necessary precautions and provide the necessary safety equipment in those areas."

*Hughes*, 227 Mich. App. at 8 (quoting *Funk*, 392 Mich. at 104).

The language above suggests that the Court's analysis should consider the facts as they existed at the time of the Decedent's fatal injury, when the workers onsite were exposed to the specific danger at issue. In the instant case, the risk of danger posed by the defective sheave block and rigging system only exposed a few employees of one subcontractor to danger. The common work area exception therefore does not apply.

*3. Negligent Entrustment Claim*

Plaintiff argues that, even if the common work area doctrine does not apply, Defendant is still liable for its negligently supplied tool. However, Plaintiff has long ago abandoned this claim, as noted in the Court's November 22, 1995 Opinion and Order: "At the September 18, 1995 hearing on the Motion for Summary Judgment, Plaintiff's counsel informed the Court that Plaintiff did not intend to pursue the negligent entrustment theory of liability." (Nov. 22, 1995 Op. and Order at 3 n. 2.) *Anglers of the Au Sable v. U.S. Forest Service*, 565 F. Supp. 2d 812,

839 (E.D. Mich. 2008) ("It is well settled that abandonment may occur where a party asserts a claim in its complaint, but then fails to address the issue in response to an omnibus motion for summary judgment.").

## IV. CONCLUSION

For the reasons stated above, the Court will:

(1) **GRANT** AAC's Motion for Summary Judgment, and

(2) **DISMISS** the case **WITH PREJUDICE**.

**SO ORDERED**.

Dated: 4-18-12
Detroit, Michigan

_____
PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE